who is currently in the custody of the Bureau of Prisons. At trial, Mr. Garcia-Sanchez's case rested on whether or not he was under surveillance while he was in the United States. And in this case, who testified I saw him climb over the fence? No one testified to that, Your Honor. Isn't that the problem? That is not the problem, Your Honor. All right. Why not? Agent Reed made a statement in front of the grand jury that other agents saw Mr. Garcia-Sanchez climb over the fence. I know. But when you got to the other agents, everybody disclaimed that. That's why I ask, who saw him climb the fence? We were unable to determine conclusively who Agent Reed spoke to. During the trial, I tried to lay a foundation for Agent Reed's knowledge concerning whether or not somebody saw Mr. Garcia-Sanchez cross over the fence and run north into a field, and I was shot down at that. At SCR 23, I stated, Did you read the reports concerning the arrest and detention of Mr. Garcia prior to testifying in front of the grand jury? Answer, yes, I did. The court then stated that unless I could establish that Agent Reed was a recipient witness, his summary of the reports was not admissible. Even though I explained, I was not asking about the events in the report. At ER 17, I then asked whether or not Did you try to get that information in discovery, or did you wait until trial? Excuse me, Your Honor? Did you try to get that information during discovery, or did you wait until trial? I tried to get all the information I could about that case prior to trial. I filed a discovery motion to obtain all the relevant discovery. And did you not figure out who the other people were that he'd been talking to, and who had been precipient witnesses to this event? I just received the information that was disclosed to me by the government. Whether or not other information was held back, I do not know. I do know that there were video cameras that were used in this case, and Agent Mariner testified. The problem I have is, you know, I mean, we're very aware of the case that you're trying to hang your hat on here. And I don't fault you for that at all. It's just that I can't find anybody who works as a witness who saw him climb over to prove that he was in continuous surveillance. Well, Agent Mariner testified that Border Patrol uses video cameras. And he testified to that at, I believe, S.E.R. 12. And we have no statement from anybody who was the operator of those video cameras concerning whether or not they spoke to Agent Reed. I tried to establish the Agent Reed's – the foundation for Agent Reed's statement that other agents saw Mr. Garcia-Sanchez climb over the fence and then run north onto a field. Well, this was a defense that you were mounting based on United States v. Pacheco Medina, correct? Yes, Your Honor. Did you have some kind of burden with respect to the defense? It seems that you didn't carry your burden. Not that you didn't try, but you didn't succeed. The defense never has the burden of proof in a criminal prosecution. That's what I was asking. Was this your defense? It was my defense, Your Honor. However – So the prosecution has to show that he was not under surveillance? Yes, Your Honor. And in this case, we do not know where Agent Reed obtained his information from. He made a sworn assurance in front of the grand jury which the government relied on to indict Mr. Garcia-Sanchez. However, we don't know how he obtained that information. Repeatedly, I tried to find a basis for how he obtained that information, and I was unable to do so. I was continuously shut down by the district court. The question on retrial, I think, will be what is the basis for Mr. Garcia-Sanchez's – excuse me, for Agent Reed's testimony. And that's something that the government is going to have to address at a new trial. At this point in time, we don't know where Agent Reed obtained his information, and even though I tried to establish that at trial, I was unable to do so. There was certainly quite a bit of evidence that Mr. Garcia-Sanchez was under surveillance when he entered into the United States. The critical issue, though, was not whether or not he was under surveillance once he entered into the United States. The critical issue was whether or not he was seen crossing over the international boundary fence and running north into a field. Counsel, wasn't there evidence in the record, though, that the – that your client climbed the fence undetected? Wasn't there also evidence to that effect in the record? The government presented witnesses who testified that they did not see Mr. Garcia-Sanchez climb over the international boundary fence and run north onto a field. However, the witness I wish to present to the jury was Agent Reed, who said that agents did, in fact, see Mr. Garcia-Sanchez climb over the international boundary fence and run north onto a field. What was the exact language used by Agent Reed? Agent Reed, and I'm citing ER-10, Your Honor. At approximately 11 o'clock that evening, Border Patrol agents observed a group of three people enter the United States by climbing over a fence from Mexico, then running north into a field. Now, then, that was a crucial piece of missing evidence that would have shown that Mr. Garcia-Sanchez was under surveillance under Pacheco-Medina. But the court ruled that he couldn't testify to that because he wasn't a recipient witness as to that event. That is correct, Your Honor. And what was wrong with that ruling? Well, the advisory committee notes to 801D2 state that there is no guarantee of trustworthiness required for an omission. Isn't that an abuse of discretion? Don't we review that ruling for abuse of discretion? No, Your Honor, because this was an evidentiary ruling, which this Court reviews de novo under United States v. Mateo Mendez. An evidentiary ruling? The admission of evidence? It seems to me that you've styled your entire appeal in terms of whether the grand jury testimony should have been admitted. That's a classic case of an abuse of discretion standard. Well, the district court phrased this ruling in terms of an evidentiary one. It termed And that's what you appealed. That's correct, Your Honor. Well, you phrased it, too. Well, I appealed it based upon the government, excuse me, the district court. The court reviews issues relating to the interpretation of evidentiary rules de novo. You've got this wrong.  Under Mateo Mendez, Your Honor. The district court. The decision as to whether or not to admit evidence is interpreted, is reviewed for abuse of discretion. Now, I know what you're getting at. You're saying that the district court didn't understand the underlying legal question. That's correct, Your Honor. Okay. The underlying legal question was whether or not this was hearsay. And the district court did not make the additional step of determining It didn't conduct a 401 or 403 analysis, which would be the additional step once you got through whether or not it was admissible as a party opponent admission under 801D2. But because the district court never made the additional step, I think that this court's ruling should be a de novo review. And the fact of the matter is, is that the district court did make an evidentiary error. It misconstrued the Federal Rules of Evidence. 801D2 states that there is no guarantee of trustworthiness required for an admission. Therefore, Agent Reed did not have to have personal knowledge for his statement to be admissible. And the government misconstrues my argument. I'm not arguing that Agent Reed binds the government. I'm not arguing that a government agent always binds the government. I'm merely arguing that his statement is admissible. It's enough to be ---- Take his statement under Pacheco-Medina. Doesn't the incoming illegal have to be under constant surveillance of the government? Well, I think that the opinions of this ---- Is that correct? Under the strict reading of Pacheco-Medina, yes, Your Honor. But the portion of the record you cite says that Reed said the border agents observed a group of three people climbing over a fence. But then if you go on, a second agent went to that area and followed the footprints that led from the general vicinity, followed the footprints north and came across three people. That seems to indicate that they were lost from sight of the Federal agents at some point. Because you wouldn't have to follow footprints if you knew where they were. Well, that's all supposition, Your Honor. Well, and one of the agents testified that there was just an assumption that he jumped over the fence. That's the way they explained this business in the report. And that's what the district court said. There's no showing of percipience underneath these reports. There was an assumption there. That's why you don't get this in. We don't know whether or not Agent Reed relied on that report. We don't know whether or not he relied on the report that contained that assumption. We don't know what evidence Agent Reed relied on. And I would like to reserve my remaining time for comment. All right. We'll hear from the Governor. May it please the Court. Roger Haynes representing the United States in this matter. A defendant's argument this morning I think is the second shift that he has created in this case from the arguments he made in the district court. First of all, when he presented the testimony of Agent Reed, he did not ever use the word that this was an admission of a party. He simply offered the testimony. The judge said, I don't think Agent Reed is percipient. You can put him on for anything that he knows and we'll have him testify to that. Counsel basically acquiesced in that ruling. And when the judge said, no, I don't think he's testifying to anything that's percipient, counsel eventually excused the witness. And it was not until the jury instruction conference that he for the first time raised the issue that this was an admission of a party opponent. Now for the first time on appeal in this argument and not in his brief, he's saying the real problem is I was not allowed to probe the basis for Reed's knowledge as to what he based his mistake, his mistaken report to the grand jury. Oh, I don't understand that. I think he's saying it doesn't make any difference whether Reed knew what he was talking about as long as Reed said it, it was evidence of constant surveillance because it was an admission of a party litigant and you don't require any knowledge requirement before that comes in. If that's the argument, that's the argument he's making. That's what I understand. All right. I thought he was making an additional argument that somehow there was another error here that he was prevented from the question he raised that he cited to the court. He was prevented by the judge from asking what the basis for Reed's knowledge. I don't think personal crime would be a blunder because Reed would immediately say I don't have any percipient knowledge. Exactly. So I don't think you can lead him into that position. All right. All right. Certainly that was the judge's view of the matter, that it was clear what the basis for his report was. At any rate, it seems to me the argument the government wants to make in this case is that the court should not be led into discussing or getting into the question of admissions of a party because it is clear no matter what in this case that any error was absolutely harmless. The defendant, Judge Keepe, essentially ruled that the source of the information was Acosta's report and found that therefore, Judge, the agent Reed knew nothing. His testimony was basically nothing because it was based on nothing. It was clearly a mistake. And if the testimony had come before the jury, they would have learned that as well. The source of Reed's information was Acosta's report. Yes. And Acosta testified. To my knowledge, nobody saw him jumping across the fence. We assume that. Exactly. And that's why you're saying this is all harmless because if you get to the bottom line, that's the answer. That's right. It was an assumption rather than an observation. That's right. If he had been allowed to have Reed testify that I did say before the grand jury that Agent saw him jumping over the fence, cross-examination would have been as follows. Agent Reed, where did you get that information from? I based it on Acosta's report. Is that information in Acosta's report? No, it isn't. How can you explain that? I was just mistaken. I was sloppy. End of discussion. No question for the jury. And no question that the jury would rely on that non-precipient mistake as opposed to the precipient testimony of the other two witnesses. In addition, and I think Judge Beal was about to point this out, there was other evidence that this defendant was free from official restraint because he was out of sight for eight minutes after he crossed over the border while they were looking for him. So even if the jury had credited this mistake by Reed, that somebody had seen him crossing over the border, they could still have found that he was free from official restraint. How does this Pacheco Medina business now play out in actuality? Does the government have to prove that he was not under continuous surveillance? Is it a defense? Does the burden fall upon the defendant? You have a lot of Pacheco Medina cases going on down in San Diego, and how's this played out? We do, and we agree that we have the burden to prove it. What has saved us, finally, is the Ninth Circuit opinion that says that attempting to— The government was saved by a Ninth Circuit opinion? Hard to believe. Hard to believe. A ruling that says that attempted entry into the United States is—I'm sorry. One of the two of them is not a defense to the other. If you're found in the United States, you cannot—I'm sorry. Don't worry. I get tangled up in this stuff all the time, too. Found in, attempted to enter, entered. And I'm the lawyer who lost the Pacheco Medina case. At any rate, being attempted to enter the United States is not a defense to being found in the United States. So if we charge you with attempting to enter the United States—I'm sorry. And we charge you with attempt, and you defend on the ground that you were really found in, that you succeeded in being free from official restraint, that is not a defense. You are still guilty of attempt. So the result is that we charge almost everybody with attempt when they— An attempt, and that gets rid of the Pacheco Medina problem and everything else. It does. All right. If there are no further questions? No. We'll hear from the other side. You've heard it clearly. The government says, does that make any difference? Because if you get to the bottom line and you look under the covers, you'll find there's nothing there. Your response? The government is adding evidence into the record that was not present at the trial. We have no proof whatsoever. Mr. Haynes has presented no proof that Agent Reed's—the basis for Agent Reed's knowledge came from the report written by Agent Acosta. We have nothing that proves that. Where else would it have come from? It could have come from the camera operators. He could have spoken to the camera operators who Agent Mariner said assisted him in locating Mr. Garcia Sanchez. It could have come from other agents who were in the vicinity. It could have come from other reports that I did not have access to. We have no basis to determine that Agent Reed's knowledge came from the report written by Agent Acosta. When Agent Acosta was subsequently questioned by defense counsel about her report, she testified she drew her own inferences as to how Garcia Sanchez entered the United States. My question is whether or not Agent Mariner told you how Garcia Sanchez entered the country. No. But you have in your report he climbed the international boundary fence. Correct. Where did you get that information? Well, that's based on the location. And the only way you can get it is by climbing over it. Did Mariner speak to you about this case? No. And he never mentioned how Garcia Sanchez came to the United States. He said he followed footprints. Based on your testimony on direct, is it fair to say based on Sanchez's location, the information received about his location, you assume he came over by climbing the fence? That's correct. And is that why you wrote on that report? That's correct. That's not good enough? No, Your Honor, because there is nothing linking Agent Acosta's report to Agent Reed's testimony. Agent Reed never testified. He never stated, and there's no evidence that his basis of knowledge that Agents saw Mr. Garcia Sanchez climb over the international boundary fence and run north onto a field was based upon Agent Acosta's report. We have nothing that shows that. Well, did you identify who these so-called camera operators are that might have said  No, I was unable to identify them, Your Honor. What does that mean, I was unable to? You tried and couldn't find anybody that would? I believe that there was a camera operator that was available. Did you interview the camera operator? No, I did not, Your Honor. Well, what do we know about the camera operator then? You're telling us the camera operator did it, but now you're telling us you didn't interview the camera operator. Forgive me, Your Honor, it was not my intention to tell this Court that the camera operator did it. You said it could have come from the camera operator. That's correct. But how do we know that? You didn't even interview them. You talk about something that's not in the record. Well, the government is mentioning that Agent Reed's, the sole basis for Agent Reed's testimony came from Agent Acosta's report. But we have no indication showing that, and it's the government's burden. And they haven't presented any evidence to show that Agent Acosta's report was a basis for Agent Reed's testimony. All right. Thank you, Your Honor. Thank you both. The case is argued as ordered and submitted. We'll call the United States v. Banuelos. Thank you.
judges: Trott, Rawlinson, Bea